1  Nisha Verma (SBN 284130)
   verma.nisha@dorsey.com
2  DORSEY & WHITNEY LLP
3  600 Anton Boulevard, Suite 2000
   Costa Mesa, CA 92626
4  Telephone: (714) 800-1400
5  Facsimile: (714) 800-1499

6  Attorney for Defendant
7  FALCK MOBILE HEALTH CORP.

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | LISA DEANNE ROSE, individually, and on behalf of all others similarly situated, | CASE NO: **'24CV0124 RSH AHG**
12 | |
13 | Plaintiff, | [San Diego Superior Court Case No. 37-2023-00042277]
14 | v. |
15 | FALCK MOBILE HEALTH CORP., a California corporation; and DOES 1 through 10, inclusive, | **NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (FEDERAL QUESTION)**
16 | |
17 | Defendants. | **[28 U.S.C. §§ 1331 AND 1441]**
18 | |
19 | | Filed Concurrently With Civil Cover Sheet; Appendix of State Court Pleadings; Declarations of T. Solomon and N. Verma; and Corporate Disclosure Statement
20 | |
21 | |
22 | | Complaint Filed: September 28, 2023
   | | Trial Date:      None Set
23
24
25
26
27
28

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Falck Mobile Health Corp., a California Corporation ("Defendant"), respectfully removes the instant action, *Lisa Deanne Rose, individually, and on behalf of all others similarly situated v. Falck Mobile Health Corp, a California Corporation*, originally commenced in the Superior Court of the State of California in and for the County of San Diego, Case No. 37-2023-00042277, to the United States District Court for the Southern District of California. Removal is proper because this Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this action arises under federal law. Specifically, Plaintiff's claims are substantially dependent upon the interpretation of a collective bargaining agreement that governs the terms and conditions of the vast majority of the putative class employees that Plaintiff seeks to represent. Plaintiff's claims are, therefore, preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c). In support of this removal, Defendant states the following pursuant to 28 U.S.C. § 1446(a):

## I. BACKGROUND AND SUMMARY OF PLEADINGS

1. Plaintiff Lisa Deanne Rose, (hereinafter "Plaintiff") was employed by Falck Mobile Health Corp, a California Corporation ("Defendant") for approximately 1.5 years in its San Diego operation, beginning on January 31, 2022. *See* Declaration of Tom Solomon ("Solomon Decl."), filed herewith, ¶ 17. Plaintiff's employment with Defendant ended on July 14, 2023. *Id.*

2. Defendant Falck is an emergency medical services provider. *Id.* at 6. Through partnerships with the City of San Diego and the San Diego Fire-Rescue Department, Defendant has provided emergency medical services for America's eighth largest city since November 2021. Defendant relies upon a team of

1 paramedics, emergency medical technicians ("EMTs"), vehicle service technicians, mechanics, and other roles to ensure it can provide responsive and effective services to the community Defendant services. *Id.*

3. Like any other employer, Defendant's staffing levels fluctuate daily, but it presently employees approximately 477 nonexempt employees in its San Diego operation. *Id.* at ¶ 8. Of these, approximately **470**, or 99% of all nonexempt employees, are represented by the San Diego Association of Pre-Hospital Professionals ("SDAPP" or the "Union"). *Id.* at ¶ 9.

4. Another aspect of the San Diego workforce are the dispatchers, nonexempt employees represented by Teamsters Local 542. Solomon Decl., ¶ 10. Approximately eight nonexempt dispatchers were staffed at Falck's San Diego operation, but all but two were recently hired by the City of San Diego and are no longer directly employed by Defendant. *Id.*

5. In all, Defendant's San Diego operation includes **just five** nonexempt, non-union positions, including two liaisons to the City of San Diego, one receptionist, and two schedulers. *Id.* at ¶ 12. Plaintiff was one of these employees. *Id.*

6. Plaintiff's Complaint seeks to represent: "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." Complaint, at ¶ 25. At minimum, Plaintiff seeks to represent all non-exempt individuals in the San Diego operation ("the Putative Class"), comprised of at least 99% union members.[1]

7. Defendant and the Union negotiated collective bargaining agreements

---

[1] The entity Falck Mobile Health Corp. operates an entirely separate operation servicing municipal contracts in Los Angeles and Orange Counties which Plaintiff had no connection to. Solomon Decl., ¶ 7. To the extent Plaintiff is seeking to represent the employees of the separate LA/OC operation, all but a handful of nonexempt employees in that operation are subject to a collective bargaining agreement between Falck and NAGE Local 370 with meal periods provisions similar to those of the SDAPP CBA outlined in Paragraphs 31 to 33 of this Notice, and the same arguments apply with respect to those employees. *Id.*, ¶ 19.

1  ("CBAs") to govern the terms and conditions of employment for 99% of Defendant's
2  San Diego non-exempt workforce.

3      8.    The Union and Defendant negotiated a CBA in 2021 that was effective
4  during the first portion of the putative class period, expiring on December 31, 2022.
5  Solomon Decl., at ¶ 13, Exh. A. This CBA was the first entered between Defendant
6  and the Union after Defendant assumed services for the City of San Diego in
7  November 2021. *Id.*

8      9.    Defendant and the Union negotiated another CBA, which is deemed to
9  be effective January 1, 2023 to December 31, 2025. *Id.*, at ¶ 14; Exh. B. The CBA
10  governs the terms and conditions of employment for employees in the Putative Class,
11  including working conditions, hours of work, seniority, scheduling, wages,
12  discipline, leaves of absence, drug and alcohol policies, and health & safety. *Id.*

13      10.    On or about December 21, 2023, Defendant was served with the above-
14  captioned action in the Superior Court of California, County of San Diego, Case No.
15  37-2023-00042277-CU-OE-CTL. True and correct copies of the Complaint,
16  Summons, and Civil Case Cover Sheet are attached hereto as Exhibits 1, 2, and 3,
17  respectively. Notice of Case Management Conference and Alternative Dispute
18  Resolution Information Package is attached hereto as Exhibits 4. Falck answered the
19  Complaint on January 18, 2024, which Answer is attached as Exhibit 5.

20      11.    Plaintiff's Complaint seeks damages on behalf of herself and other
21  allegedly similarly situated persons who were or are currently employed by
22  Defendant, the Putative Class.

23      12.    Plaintiff's requested relief turns on a question of federal law, and is
24  therefore removable to this Court. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1441. Plaintiff
25  alleges, on behalf of the Putative Class, that Defendant violated the terms of its CBA
26  and raises issues substantially dependent on the substantive interpretation of the
27  CBA(s). Because such an interpretation is a role reserved to the federal courts,
28  removal is appropriate. *See* 29 U.S.C. § 185(a); *Allis-Chalmers Corp. v. Lueck*, 471

1  U.S. 202, 209 (1985).

2  13. A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of San Diego. Exhibits 1–5 contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action.

## II. STATEMENT OF FEDERAL QUESTION JURISDICTION

14. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), because this is a civil action that presents a federal question.

15. Plaintiff's claims are either based upon or preempted by federal law, specifically Section 301 of the Labor Management Relations Act ("LMRA" generally, and "Section 301" specifically), 29 U.S.C. § 185(a). Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Id.*

16. Section 301 is a powerful statute with a complete preemptive effect. "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.* 463 U.S. 1, 23 (1983); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) ("To give 'the policies that animate § 301 . . . their proper range,' the Supreme Court has expanded 'the pre-emptive effect of § 301 . . . beyond suits alleging contract violations' to state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." (quoting *Allis-Chalmers*, 471 U.S. at 210–11)).

17. Section 301's complete preemptive effect necessarily includes "any state [law] claim whose outcome depends on an analysis of the terms of the

4

1  agreement." *Newberry v. Pacific Racing Ass'n* 854 F.2d 1142, 1146 (9th Cir. 1988).
2  "Once preempted, 'any claim purportedly based on [a] state law is considered, from
3  its inception, a federal claim, and therefore arises under federal law.'" *Kobold*, 832
4  F.3d at 1032 (quoting *Caterpillar, Inc. v. Williams* 482 U.S. 386, 393 (1987)).

5     18.   The preemptive effect of Section 301 is so complete that it is not a
6  requirement for the face of a complaint to allege or even reference federal law, a
7  CBA, or the LMRA. *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1151–52 (9th Cir. 2019).
8  Importantly, the preemptive effect of Section 301 cannot be thwarted by "artfully
9  pleading" a claim to allege *solely* state law claims. *Loaiza v. Kinkisharyo Int'l, LLC*,
10 CV19-07662JAK, 2020 U.S. Dist. LEXIS 185279, at *11 (C.D. Cal. Oct. 6, 2020)
11 ("Artful pleading cannot sidestep Section 301 preemption.").

12    19.   A state law claim may be properly "re-characterized" as a federal,
13 Section 301 claim because the "complete preemption" doctrine "converts an ordinary
14 state law complaint into one stating a federal claim for purposes of the well-pleaded
15 complaint rule" and is removable to federal court in the Section 301 context.
16 *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v.
17 Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause
18 of action completely preempts a state cause of action, any complaint that comes
19 within the scope of the federal cause of action necessarily 'arises' under federal
20 law."); *see also In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005) (recognizing the
21 complete preemption doctrine "provides an exception to" the well-pleaded complaint
22 rule, and that the Supreme Court recognizes the LMRA as one of "only three federal
23 statutes" within this category).

24    20.   For example, courts have found meal period claims preempted where
25 the employee's entitlement to meal periods and/or premiums has been altered or is
26 dependent on an interpretation of a CBA. *See e.g., Chatman v. Wedriveu, Inc.*, No.
27 3:22-cv-04849-WHO, 2022 U.S. Dist. LEXIS 199533, at *22, 2022 WL 15654244
28 (N.D. Cal. Oct. 28, 2022); *Coria v. Recology, Inc.* 63 F.Supp.3d 1093, 1097 (N.D.

Cal. 2014).

21. Other courts in this District have resisted attempts to allow such "artful pleading . . . to circumvent congressional intent regarding collective bargaining agreements and preemption." *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 748 (S.D. Cal. 2021) (quoting *Martinez v. Omni Hotels Mgmt. Corp.*, 514 F. Supp. 3d 1227, 1235 n.3 (S.D. Cal. 2021).

22. The Supreme Court has explained that the Congress intended for Section 301 to authorize the development of a federal common law, pertaining to the interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 411 (1988). The reason is straightforward: because most rights to collectively bargain are federal in nature, those rights should be adjudicated on a level playing field in a neutral forum: the United States District Courts. Promoting uniformity among competing interpretations of federal labor law is at the very core of Section 301's purpose. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103– 04 (1962); *Lingle*, 486 U.S. at 411.

23. Federal courts in California have consistently declined to remand to state court cases involving the interpretation of a CBA. *See, e.g., Radcliffe*, 519 F. Supp. 3d at 748 (declining to remand overtime, meal and rest break, and PAGA claims); *Correa v. A2 Railla Dev., Inc.*, 2:22-CV-07128-ODW, 2023 U.S. Dist. LEXIS 187662, at *16–17 (C.D. Cal. April 7, 2023) (declining to remand claims existing "solely as a result of the CBA."); *Giles v. Canus Corp.*, No. 22-CV-03097-MMC, 2022 U.S. Dist. LEXIS 146789 (N.D. Cal. Aug. 16, 2022); *Chatman*, 2022 U.S. Dist. LEXIS 199533, at *22; *Fennix v. Tenderloin Hous. Clinic, Inc.*, No. 20-CV-05207-DMR, 2020 U.S. Dist. LEXIS 205587 (N.D. Cal. Nov. 3, 2020); *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, No. CV-2109959-MWF-AGR, 2022 U.S. Dist. LEXIS 42113 (C.D. Cal. Mar. 8, 2022); *Blackwell v. Com. Refrigeration Specialists, Inc.*, No. 2:20-CV-01968-KJM-CKD, 2021 U.S. Dist. LEXIS 119212

(E.D. Cal. June 25, 2021).

24. Even in cases where the "federal question" is inserted in an action only by a defendant's defense of Section 301 preemption, Courts apply LMRA preemption. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA"). Thus, any suit "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law. *Curtis*, 913 F.3d at 1152.

25. Adjudicating Plaintiff's Complaint will require interpretation of the CBA. Specifically, as detailed further in the sections below, Plaintiff's meal period claim on behalf of the Putative Class, nearly all of which are subject to the CBA, necessarily relies on the meaning of the meal period provisions in the CBA, which were negotiated between Defendant and the Union. *See, e.g., Lingle*, 486 U.S. at 405–06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted").

### A. The Terms of the CBA Govern the Terms and Conditions of Employment for Nearly Every Member of the Putative Class.

26. At all relevant times alleged in the Complaint, Defendant has been a company engaged in commerce and in an industry affecting commerce, and is subject to the jurisdiction of the National Labor Relations Board, before which it has had proceedings. Solomon Decl., ¶¶ 6, 13, 14. Defendant is accordingly subject to the NLRA and LMRA within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

27. The Union is a labor organization in which certain employees of Defendant participate and which exists to address employee concerns, labor disputes, wages, rates of pay, hours of employment, conditions of work, discipline, and discharge. At all relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C.

§§ 152(5) and 185(a).

28.     Article I of the CBA specifically recognizes the Union as the exclusive representative for covered employees, including nearly all of the members of the Putative Class, for the purposes of collective bargaining to establish rates of pay, hours of work and other conditions of employment. *Id.*, at ¶ 16, Exh. B. The terms of the CBA govern nearly every imaginable aspect of employment for an individual within the bargaining unit. *Id.*, at ¶ 16, Exh. B.

### B.     Plaintiff's Meal Period Claim Requires an Interpretation of the CBA's Meal Period Provisions, Making Removal Necessary.

29.     Courts in the Ninth Circuit apply a two-part test when applying Section 301 preemption standards.[2] *Curtis*, 913 F.3d at 1152. First, the Court considers "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Id.*, quoting *Kobold*, 832 F.3d at 1032. Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). Where that is the case, "the claim is preempted, and [the] analysis ends there." *Burnside v. Kietwit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If not, the Courts consider whether the alleged state law right is substantially dependent on analysis of the CBA. *Curtis*, 913 F.3d at 1153. If claims are dependent on interpretation of the CBA, then the claim is preempted by Section 301. *Radcliff*, 519 F. Supp. 3d at 748 (citing *Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *2 (N.D. Ca. Nov. 8, 2019), and *Burnside*, 491 F.3d at 159–60).

---

[2] The Court may receive pleadings and evidence outside the face of the complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts presented by qualified witnesses with the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

30. In her Complaint, Plaintiff alleges that Defendant is liable on her meal period claim because it "required Plaintiff *and the [Putative] Class* to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and *duty-free* meal period *for every five hours of work*, or without compensating Plaintiff and the Class for meal periods that were not provided by *the end of the fifth hour of work or tenth hour of work*." Complaint, ¶ 16 (emphasis added). Accordingly, Plaintiff has admitted that her theory of liability in this matter hinges on whether the Putative Class (nearly all of whom are subject to the CBA): (1) were provided with *duty free* meal periods; (2) were provided with meal periods *within the timelines* asserted by Plaintiff (by the end of the fifth hour of work or tenth hour of work); and (3) were provided with the *number of meal periods* asserted by Plaintiff (two meal periods for a ten hour shift).

31. However, the CBA sets out the terms and conditions for the meal periods of nearly all of the members of the Putative Class, and the interpretation of those provisions is required to resolve Plaintiff's theory of liability.

32. First, Section 4.04 of the CBA sets out language that seeks to waive, by the Union on behalf of nearly all of the members of the Putative Class, of the right to a "duty free" meal period. Solomon Decl., ¶ 14, Exh. B. See excerpted language below.

> Due to the nature of the Employer's operations, the need for employee services will vary widely with each scheduled workday, and there are instances when employees cannot be completely relieved of all duties during a meal period. The nature of the Employer's operation includes the provision of emergency services to provide for and enhance public health and safety, and such services necessitate that employees remain in close proximity to their designated emergency vehicles. To allow for these circumstances, the Association, on behalf of the employees, has agreed to designate meal periods as "on-duty" and the Employer has elected to provide paid

> meal periods without any deduction of time at the employee's regular rate of compensation.
>
> Employees understand that, due to the nature of the Employer's operations, there are occasions when employees will be required to respond to an emergency call during their meal period and/or occasions in which the meal period will be otherwise interrupted. If an employee's meal period is interrupted, the Employer will endeavor to provide an uninterrupted meal period during the same shift, but in the event that this uninterrupted meal period cannot be taken, the employee will be compensated one (1) hour of regular compensation at the employee's regular hourly rate.
>
> Employees also understand that the Employer or the Association, on behalf of the employees, may revoke the agreement to provide "on-duty" meal periods in writing at any time.

The question of whether the above language is sufficient to waive the rights of the Putative Class (nearly all of whom were subject to the CBA), to the "duty free" meal periods Plaintiff alleges such Putative Class members were entitled to in her Complaint, will require the Court to interpret Section 4.04, and therefore Plaintiff's claim requires an interpretation of the CBA.

33. <u>Second</u>, Section 4.04 the CBA sets forth the timelines within which nearly all of the members of the Putative Class can take meal periods:

> Employees working less than twenty-four (24) hour shifts may request meal periods through the dispatch center at any time during their shift except for the first and last hour of the shift, but cannot be required to take a meal period during the first three (3) hours and the last two (2) hours of their shift (i.e., non-24-hour meal period window). Employees working twenty-four (24) hour shifts may request meal periods through the dispatch center during each five and one-half (5½) hour segment during the first sixteen and one- half (16½) hours of their scheduled shift,

>except for the first hour of their shift, but cannot be required to take a meal period during the first three (3) hours and the last seven and one-half (7 ½) hours of their shift (24-hour meal period window).

Solomon Decl., ¶ 14, Exh. B.

The rules above, which were negotiated at arms-length by the Defendant and the Union, altered and amended the meal period windows for nearly all members the Putative Class, so that they are different than the requirements asserted by Plaintiff (by the end of the fifth hour of work or tenth hour of work). Specifically, the CBA provides that for nearly all members of the putative class, employees have the choice to take meal periods throughout the entire shift (except for the first or last hour for short shifts, and except for the first hour for 24 hour shifts), but cannot be *required* to take meal periods outside the stated windows. Defendant and the Union negotiated the above rule based on their shared understanding of the requirements of Proposition 11, codified at California Labor Code sections 883 to 889, which was voted into law by ballot proposition in 2018 to provide specific rules relating to meal and rest breaks for the ambulance industry.[3]

Accordingly, the resolution of Plaintiff's meal period claim, which alleges that Defendant acted illegally by not providing meal periods within the timeframe she asserts, requires an interpretation of the CBA to determine whether the Section 4.04 properly alters and amends the required timelines for the meal periods for nearly all of the members of the Putative Class. *See e.g., Chatman*, 2022 U.S. Dist. LEXIS 199533, at *22; *Coria,* 63 F.Supp.3d at 1097.

34.  Third, the CBA alters and amends the required number of meal periods for nearly all of the members of the Putative Class. Section 4.04 of the CBA states:

---

[3] *See* Proposition 11, LEGISLATIVE ANALYST'S OFFICE, CALIFORNIA STATE LEGISLATURE, 2018 (last access Jan. 18, 2024) (https://lao.ca.gov/BallotAnalysis/Proposition?number=11&year=2018); *see also* Official Voter Guide, CALIFORNIA SECRETARY OF STATE (ARCHIVED), 2018 (last access Jan. 18, 2024) (https://vigarchive.sos.ca.gov/2018/general/quick-reference-guide/11.htm).

> Employees assigned to twenty-four (24) hour shifts shall be allowed three (3) paid meal periods. Employees assigned to a shift of less than twenty-four (24) hours shall be allowed one (1) paid meal period for every eight (8) hour work period, except that employees assigned to twelve (12) hour shifts are allowed a second paid meal period during their shift. In the event an employee works more than ten (10) hours but no more than twelve (12) hours, and the employee has received at least one (1) paid meal period during the shift, the Employer and employee agree to waive the second paid meal period. If employees assigned to twenty-four (24) hour shifts receive at least two (2) paid meal periods during the shift, the Employer and employee agree to waive the third meal period. Each paid meal period shall be thirty (30) consecutive minutes.

Solomon Decl., ¶ 14, Exh. B.

Plaintiff's meal period claim is based on the premise that the Putative Class (including those subject to the CBA) were entitled to, but were not provided, two meal periods. However, the CBA alters and amends the requirements for nearly all of the members of the Putative Class, providing three meal periods for employees working 24 hours, and two meal periods for employees working 12 hours. The CBA also includes language that seeks to waive, on behalf of nearly all members of the Putative Class, the second meal periods for shifts between 10 and 12 hours, where the employee received their first meal period, and the third meal period for 24 hour shifts, where the employee received their first two meal periods. The Court will therefore be called upon to analyze and interpret Section 4.04 to determine whether it was sufficient to waive the second meal period for nearly all employees in the Putative Class, and determine what legal effect, if any, Defendant's provision of a third meal period has on Plaintiff's claim that the required number of meal periods were not provided. *See Ehret v. WinCo Foods, LLC*, 26 Cal. App. 5th 1, 5 (2018) (noting that it "is well settled that a union may lawfully waive statutory rights of represented employees in a collective bargaining agreement" and affirming summary

judgment for employer where CBA provided for a meal period waiver)*; Marquez v. Toll Glob. Forwarding (USA) Inc.,* No. 218CV03054ODWASX, 2018 WL 3218102, at *4 (C.D. Cal. June 28, 2018), aff'd sub nom. *Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679 (9th Cir. 2020) at *3–4 (dismissing with prejudice meal and rest period claims as preempted by § 301 where interpretation of meal and rest period provisions of CBA required).

35. <u>Finally</u>, the entire purpose of collective bargaining is to provide a system of mutual negotiation for the avoidance of disruptive labor disputes and excessive litigation. Here, nearly all of the members of the Putative Class were adequately represented by the Union. Defendant has already worked diligently with the Union and the employees themselves in intense negotiations to craft meal period requirements that both parties were satisfied with. That is why courts have found resolution of claims arising under a CBA to be best aired through the agreed-upon means in the CBA. *Curtis*, 913 F.3d at 1152 ("Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because [they were] chosen due to the 'parties' confidence in [their] knowledge of the common law of the shop and their trust in [their] personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.") (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579 (1960)). These claims are therefore subject to arbitration, not court litigation. *See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968) (holding, when a claim is preempted by Section 301, an employee's remedy lies within the CBA).

### III. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING CLAIMS.

36. Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state and federal claims "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725

(1966); *see also Martinez*, 514 F. Supp. 3d at 1242 ("A district court may exercise supplemental jurisdiction over claims brought with a LMRA-preempted claim.") (citing *Ellis v. Gelson's Markets*, 1 F.3d 1246 (9th Cir. 1993)). Plaintiff's non-preempted claims form the same nucleus of operative fact as her preempted claims, or are otherwise derivative of preempted claims.

37. Because Plaintiff's remaining claims are part of the same nucleus of operative fact as the preempted claim—the employment relationship between the Plaintiff and putative class with Defendant—the Court should exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings. *See Jensen v. Secorp Indus.*, No. 2:19-CV-07980-RGK-GJS, 2019 U.S. Dist. LEXIS 228104, at *10 (C.D. Cal. Dec. 9, 2019) (holding that an employment relationship can form the same basis of operative facts).

38. Specifically, Plaintiff's claims relating to an entitlement to rest period premiums and overtime are within the same set of facts covering Plaintiff's preempted claims. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987–88 (9th Cir. 2005) (finding employment discrimination claims and FLSA wage claims shared a common nucleus of fact because they present "a cohesive narrative of an employee-employer relationship."); *Hendon v. Cal. State Senate*, No. 21-cv-00505-BAS-MDD, 2022 U.S. Dist. LEXIS 20950, at *8 (S.D. Cal. Feb. 4, 2022) (finding state employment claims derived from common nucleus of operative facts where the plaintiff's "Complaint relies on the same facts to support both her state law employment claims and her federal discrimination claim under [42 U.S.C. § 1981].").

39. Just as in *Hendon*, the factual basis that allegedly gives rise to Plaintiff's meal period claim is inextricably linked to the same facts that give rise to her alleged rest period claims and overtime claims. That is especially true where, as here, the lion's share of factual allegations in Plaintiff's Complaint are admittedly "common to all causes of action." *See* Complaint, ¶¶13–22.

40.     In other words, Plaintiff's Complaint relies on a set of factual allegations that are common to both the preempted and *non*-preempted claims. Splitting the preempted and non-preempted claims between state and federal court would result in duplicative trials with similar evidentiary issues relating to the employment relationship Defendant had with Plaintiff and the putative class. Given these considerations, the exercise of supplemental jurisdiction over the rest period and overtime claims asserted by Plaintiff and the putative class is appropriate.

41.     The remainder of Plaintiff and the putative class's claims are entirely derivative of the resolution of Plaintiff's preempted claim. Plaintiff and the class seek, among other remedies, waiting time penalties, wage statement penalties, and unreimbursed business expenses. Complaint, ¶¶ 59, 65, 73. This is an appropriate basis for the Court to exercise supplemental jurisdiction. *See Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative claim also fails); *Jimenez v. Young's Market Company, LLC*, 2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage statements were preempted because they were derivative of substantive claims for owed overtime and meal break violations).

### IV.  OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

42.     Removal Was Timely. Defendant received the Complaint through service of process on December 21, 2023. This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because it is within thirty (30) days from when Defendant received the pleadings setting forth the claims for relief upon which this removal is based.

43.     State Court Within this Court's Jurisdiction. Venue is proper in the Southern District of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court Action was pending (San Diego) is found within this

District.

44. <u>Consent to Removal</u>. Defendant is not aware of any other defendants having been served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

45. <u>State Court Pleadings Attached</u>. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as the following exhibits, including Plaintiff's Complaint (Exhibit 1); Summons of Plaintiff's Complaint (Exhibit 2); Civil Case Cover Sheet (Exhibit 3); Notice of Case Management Conference and Alternative Dispute Resolution Information Package (Exhibit 4); and Defendant's Answer (Exhibit 5).

46. <u>Filing and Service of Notice of Removal</u>. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Diego.

## RESERVATION OF RIGHTS

This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved. Likewise, Defendant reserves all rights to raise any defense, claim, fact, or issue not contained herein in resistance to any forthcoming motion to remand to state court.

/ / /

/ / /

/ / /

**WHEREFORE,** Defendant requests that the above action pending before the Superior Court of the State of California for the County of San Diego be removed to the United States District Court for the Southern District of California.

Dated: January 18, 2024                    DORSEY & WHITNEY LLP


                                           By: */s/ Nisha Verma*
                                               Nisha Verma
                                               Attorney for Defendant
                                               FALCK MOBILE HEALTH CORP.,

# **PROOF OF SERVICE**

## **STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 600 Anton Boulevard, Suite 2000, Costa Mesa, CA 92626-7655. On January 18, 2024, I served the documents named below on the parties in this action as follows:

| | |
|---|---|
| DOCUMENT(S) SERVED: | **NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (FEDERAL QUESTION)** |
| SERVED UPON: | Justin F. Marquez<br>Christina M. Le<br>Zachary D. Greenberg<br>WILSHIRE LAW FIRM<br>3055 Wilshire Boulevard, 12th Floor<br>Los Angeles, CA 90010<br>Telephone: (213) 381-9988<br>Facsimile: (213) 381-9989<br>justin@wilshirelawfirm.com<br>cle@wilshirelawfirm.com<br>zgreenberg@wilshirelawfirm.com |

☒ (**BY MAIL**) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Costa Mesa, California. I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

☒ (**BY ELECTRONIC MAIL-COURTESY COPY**) Pursuant to Code Civ. Proc. § 1010.6 and Cal. Rules of Court, Rule 2.251(c), my electronic business address is massure.rayson.kim@dorsey.com and I caused such document(s) to be electronically served to the interested parties listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmissions were unsuccessful

☒ (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on January 18, 2024 at Costa Mesa, California.

_____
Kim Massure-Rayson